**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| CLASSIC MOTORWORKS LTD., *et al.*, | * | |
| Plaintiffs, | * | |
| v. | | Civil Action No. AW-04-3931 |
| | * | |
| MARTIN SCOTT, *et al.*, | * | |
| Defendants. | | |
| | * | |

* * * * *

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment [21] against Defendant Martin Scott ("Defendant" or "Scott"), to which no response has been filed. Plaintiffs Kevin Mahoney and Classic Motorworks Ltd. (collectively, "Plaintiffs") allege that Defendant (a) published false and defamatory statements concerning Plaintiffs' business practices and (b) publicized highly personal information pertaining to Plaintiff Mahoney's private life. Plaintiffs' Complaint asserts the following causes of action: Counts I and III—Defamation; Counts II and IV—Injurious Falsehood; and Count V—Invasion of Privacy. Plaintiffs move for summary judgment as to Defendant's liability, requesting that the Court schedule a one-day trial on the sole issue of damages. The Court has reviewed the pleadings and applicable law and has determined that a hearing is unnecessary. *See* Local Rule 105(6) (D. Md. 2004). For the reasons stated below, Plaintiffs' Motion for Summary Judgment will be granted.

**I.    FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff Kevin Mahoney is the president and chief operating officer of Classic Motorworks Ltd. In October 2004, Classic Motorworks Ltd. entered an agreement with Royal Enfield Motors, the India-based manufacturer of Royal Enfield motorcycles, to become its

exclusive American importer and distributor. Classic Motorworks Ltd. would import Royal Enfield motorcycles and sell them, at wholesale prices, to its retail dealerership network of approximately seventy retail dealers. Those retail dealers would in turn sell the motorcycles to the public. Classic Motorworks Ltd. did not sell motorcycles directly to the public or to any entity other than its retail dealers.[1] As stated in Plaintiffs' Complaint, it was "essential to the maintenance of the retail dealership network that plaintiff Classic Motorworks Ltd. not be perceived as selling Royal Enfield motorcycles directly to the public, as this would place plaintiff Classic Motorworks Ltd. in the position of appearing to be in competition with its network of retail dealers." (Pls.' Compl. ¶ 22.)

In November 2004, Defendant Enfield Bullet Owners Club, an organization devoted to promoting interest in Royal Enfield motorcycles, sent a letter to the retail dealers comprising Classic Motorworks Ltd.'s dealership network. The letter, which was signed by Defendant Scott, urged the retail dealers to join the Enfield Bullet Owners Club and to encourage their customers to do the same. In addition, the letter contained a survey for an upcoming issue of the "The Enfield Flyer," a newsletter published by the club, on "the marketing of Royal Enfield in America." It is the language contained in this survey that forms the gravamen of Plaintiffs' Complaint. The survey reads, in pertinent part: "In a future article entitled 'Marketing Royal Enfield in America' the 'Flyer' looks into the unorthodox approach that Royal Enfield takes in *direct selling motorcycles, parts and accessories to the public*. We look at how this undermines an already fragile dealer network with a very high turnover of dealers." (Pls.' Mot. for Summ. J., Ex. 2.) (emphasis added.) Shortly thereafter, the retail dealers received a second letter, from

---

[1] Classic Motorworks Ltd. did sell motorcycle parts and accessories directly to the public, a practice it claims Royal Enfield Motors and the retail dealers knew of and did not object to.

Robert Murphy, President of the Enfield Bullet Owners Club, referring the prior letter and survey and stating that the survey had been sent "without the knowledge or permission of the Enfield Bullet Owners Club." (*Id.*, Ex. 3.) The letter went on to say "[i]t is not our intention or place to interfere with the business relationship between you and the distributor, Classic Motorworks," and to apologize for "the inappropriate nature of this survey."(*Id.*)

In December, the retail dealers received a third communiqué, this time directly from Defendant Scott, titled "New Independent Newsletter Emerges as Royal Enfield Attempts to Muzzle the Enfield Flyer Survey." This document, consisting of excerpts from an interview with Scott, recounts Scott's resignation from the Enfield Flyer and his establishment of a competing newsletter entitled "The Neutral Finder." One of the topics addressed in the interview was the deterioration of Scott's relationship with Defendant Mahoney. Scott discussed his years of friendship with Mahoney and some of the joint adventures they took part in, noting that "Kevin introduced me to Viagra. He gave me the little blue pill and said try this when you're next in the sack. Wow!" (*Id.*, Ex. 4.) At the end of the document, following the interview, is a reproduction of the survey originally sent to the retailer dealers.

Plaintiffs' Complaint asserts that the survey falsely suggested that Classic Motorworks Ltd. directly sold Royal Enfield motorcycles to the public,[2] and that such language was defamatory, "in that it impugned the integrity and ethics of the business conduct of plaintiff Classic Motorworks Ltd. and of plaintiff Kevin Mahoney." (Pls.' Compl. ¶ 43.) Plaintiffs also bring forth a claim of injurious falsehood, contending that their business has been negatively

---

[2]Plaintiffs do not address the fact that neither Kevin Mahoney nor Classic Motorworks Ltd. are mentioned by name in the survey, which refers only to *Royal Enfield's* practice of "directly selling motorcycles . . . to the public." However, given Classic Motorworks Ltd.'s status as the exclusive American importer and distributor of Royal Enfield motorcycles, both it and its business practices are presumably implicated by this statement.

impacted by Defendants' defamatory statements and that they have suffered actual damages as a result. In total, Plaintiffs assert two claims of defamation (Counts I and III) and two claims of injurious falsehood (Counts II and IV), stemming from the dual disseminations of the survey (once in the original letter, once in the interview). In addition, Plaintiff Mahoney brings a claim for invasion of privacy, based on Scott's statement that Mahoney introduced him to the pleasures of Viagra.

Plaintiffs initiated this action in December 14, 2004. On April 22, 2005, an Order of Default was entered against Defendant Enfield Bullet Owners Club, owing to a failure to plead or otherwise respond to the Summons and Complaint. Plaintiffs' attempts to proceed against Defendant Scott did not go quite so smoothly—to wit, Scott's apparent evasion of Plaintiffs' good-faith efforts to effect service of process led to this Court's issuance of an order authorizing alternative service upon him. (Docket No. 6.) After alternative service through both certified and first class mail was made upon him, Scott, on April 4, 2004, filed a *pro se* Answer to Plaintiffs' Complaint. (Docket No. 9.) Scott's Answer marks the last known instance of his participation in this litigation; since then, he has failed to respond to Plaintiffs' discovery requests, failed to appear for a scheduled deposition, failed to respond to Plaintiffs' motions for sanctions, and failed to submit a Status Report as required by this Court's Scheduling Order. On October 14, 2005, Plaintiffs filed a motion for summary judgment against Defendant Scott, seeking summary judgment with respect to liability, and requesting that this Court schedule a one-day trial on the issue of damages. (Docket No. 21.) In keeping with his conduct throughout the course of this proceeding, Scott has not responded to Plaintiffs' motion. Nevertheless, that motion is ripe, and the Court now issues this opinion.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). Once the moving party discharges its burden by showing there is an absence of evidence to support the nonmoving party's case, *Catrett*, 477 U.S. at 325, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### III.   DISCUSSION

Plaintiffs' Motion for Summary Judgment was filed on October 14, 2005. Local Rule 105.2(a) requires, in pertinent part, that "all memoranda in opposition to a motion be filed within fourteen days of the service of the motion." If service is by mail or electronic means, Fed. R. Civ. P. 6(e) permits the respondent an additional three days. Thus, Defendant's response was due on October 31, 2005. As of this date, well beyond the October 31 deadline, no response or motion for extension of time has been filed by Defendant. As such, Plaintiffs' motion will be treated as uncontested.

An uncontested motion for summary judgment is not automatically granted. *Campbell v. Hewitt, Coleman & Assocs.*, Inc., 21 F. 3d 52, 55 (4th Cir. 1994) (stating that although "the non-

moving party runs a great risk by not responding [to a motion for summary judgment], such positive action is not required in all instances because the court still may only grant summary judgment if appropriate."). Rule 56(e) "does not implement a 'default judgment' rule that permits a court to grant summary judgment based solely on the failure of a party to oppose facts asserted by another party." *Travelers Indem. Co. v. Liberty Mut. Ins. Co.*, 70 Fed. Appx. 673, 676 (4th Cir. 2003). Instead, the court must still determine whether the moving party is entitled to judgment as a matter of law. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). While a court must still analyze motions for summary judgment with no response, the moving party's facts are deemed uncontroverted. *Id.*

In the instant case, not only has Defendant failed to respond to Plaintiffs' motion for summary judgment, but he has offered no response to Plaintiffs' requests for admission.[3] Fed. R. Civ. P. 36(a) provides, in pertinent part, that "[e]ach matter of which admission is requested . . . is admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admissions a written answer or objection to the matter." This Court and others have held that "unanswered requests for admissions may properly serve as a basis for summary judgment" and that "with a failure to make a timely response, the truth of the matter contained in the request for admission is conclusively established and may serve as the basis for the court's consideration of a motion for summary judgment." *Donovan v. Porter*, 584 F. Supp. 202, 208-209 (D. Md. 1984). *See also United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) (default admissions under Rule 36 "can serve as the factual predicate for summary judgment") (citing *Dukes v. South Carolina Ins. Co.*, 770 F.2d 545 (5th Cir. 1985); *Donovan v.*

---

[3] The docket reflects that Plaintiffs served their requests for admissions upon Defendant by first-class mail on August 12, 2005.

*Carls Drug Co.*, 703 F.2d 650 (2d Cir. 1983)).

Plaintiffs' requests for admissions requested that Defendant admit the truth of the allegations contained in the Complaint. By failing to respond, Defendant admitted, *inter alia*, that he distributed a newsletter containing statements that were "false," "defamatory," "made . . . with an intent to injure plaintiff," and "expected to affect the value of plaintiffs' business," thereby causing hundreds of thousands of dollars in damages. (Pl.'s Mot. for Sanctions, Ex. 6, ¶ 95, ¶ 96, ¶ 135, ¶260, ¶272.) Thus, the elements of the tort of defamation have been satisfied. *See Gohari v. Darvish*, 363 Md. 42, 54 (2001) ("Under Maryland law, to present a prima facie case of defamation, a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm."). Plaintiffs also appear to have made out a claim for injurious falsehood. *See Beane v. McMullen*, 265 Md. 585, 607-608 (1972) ("Injurious falsehood . . . may consist of the publication of matter derogatory to the plaintiff's . . . business in general, or even to some element of his personal affairs, of a kind calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage.") (quoting Prosser, *Law of Torts*, at 919-920 (4th ed. 1971)). Finally, Defendant's statement that Plaintiff Kevin Mahoney "introduced [Defendant Martin Scott] to Viagra" constitutes invasion of privacy, as defined in the Restatement and adopted by Maryland courts. *See Bailer v. Erie Ins. Exch.*, 344 Md. 515, 525-526 (1997) ("One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other. The right of privacy is invaded by . . . unreasonable publicity given to the other's private life. . . .") (quoting from the Restatement (Second) of Torts § 652A (1977)). Accordingly, Plaintiffs have demonstrated that they are entitled to summary judgment on all counts.

**IV.     CONCLUSION**

While this Court harbors reservations over granting summary judgment against a *pro se* defendant on the basis of unanswered requests for admissions, the record clearly indicates that, after filing his Answer, Defendant has failed to participate in this case in any way. Defendant has ignored Plaintiffs' discovery requests, failed to appear for a properly noticed deposition, and failed to submit responses to Plaintiffs' numerous motions for sanctions and to the instant motion for summary judgment. Omissions such as these must have consequences. This Court agrees with the sentiments expressed by United States Court of Appeals for the Seventh Circuit, which, in discussing its grant of summary judgment on the basis of default admissions, stated: "We recognize the potential harshness of this result. The failure to respond to admissions can effectively deprive a party of the opportunity to contest the merits of a case. This result, however, is necessary to insure the orderly disposition of cases; parties to a lawsuit must comply with the rules of procedure." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987). Accordingly, for the reasons stated above, Plaintiffs' Motion for Summary Judgment will be GRANTED. An Order consistent with this Opinion shall follow.

Date:   December 13, 2005                                     /s/
                                                                         Alexander Williams, Jr.
                                                                         United States District Court